UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **ROBYNN L. COLEMAN,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,** *sued as Martin O'Malley, Commissioner of the Social Security Administration*,[1]<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)   Case No. 1:23-cv-00089-SLC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

Plaintiff Robynn L. Coleman appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case REMANDED to the Commissioner.

**I. FACTUAL AND PROCEDURAL HISTORY**

Coleman applied for DIB and SSI in December 2020, alleging disability as of February 13 and 14, 2020. (ECF 12 Administrative Record ("AR") 233-45).[2] Coleman's claim was denied initially and upon reconsideration. (AR 76-77, 114-15). On February 15, 2022, an administrative law judge ("ALJ") held a hearing, taking testimony from Coleman, who was represented by

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for Andrew Saul in this case. *See Melissa R. v. O'Malley,* No. 1:22-cv-02404-TAB-TWP, 2023 WL 8866397, at *1 n.1 (S.D. Ind. Dec. 22, 2023).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

counsel, and a vocational expert (AR 45-75), and on June 27, 2022, rendered an unfavorable decision to Coleman, concluding that she was not disabled because, despite the limitations caused by her impairments, she could perform her past relevant work (AR 16-37). The Appeals Council denied Coleman's request for review (AR 5-9), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On February 28, 2023, Coleman filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). In her opening brief, Coleman argues that the ALJ erred by failing to consider Coleman's lifting restrictions in the residual functional capacity ("RFC") assessment. (ECF 14 at 4). As of the ALJ's June 27, 2022, decision, Coleman was thirty-seven years old (AR 36); had four or more years of a college education (AR 270); and had past relevant work as a skilled eligibility worker (Medicaid) (AR 35), as well as other work experience as an assembly line worker, medical caseworker, certified nursing assistant, and home health aide (*see* AR 270). In her application, Coleman alleged disability due to depression, obesity, asthma, pulmonary embolism, hypothyroid, bone spur on right heel, osteoarthritis, extra bone on right foot, peroneal tendonitis, and tennis elbow/tendon tore from bone on both elbows. (AR 269).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not

supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is

3

incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920.[3] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

In the ALJ's June 27, 2022, decision, which became the final decision of the Commissioner, the ALJ observed at the outset that Coleman is insured for DIB through December 31, 2026. (AR 22). At step one of the five-step analysis, the ALJ noted that while Coleman had worked after her alleged onset date of October 8, 2020, such work did not rise to the level of substantial gainful activity. (*Id.*). At step two, the ALJ found that Coleman had the following severe impairments: bilateral lateral epicondylitis of the elbows with 2020 surgical revision repairs; asthma; Raynaud's; and obesity. (*Id.*). At step three, the ALJ concluded that Coleman did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 25-26).

The ALJ assigned Coleman the following RFC:

> [T]he claimant [has] a [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except: the claimant can frequently reach, handle, and finger bilaterally, she can occasionally climb stairs or ramps, stoop, or kneel, can never crouch,

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* §§ 404.1520(e), 416.920(e).

4

crawl, climb ladders, ropes or scaffolds, or balance, as that term is used vocationally. Occasional exposure to extreme cold, fumes, to dusts, odors, gases, and poor ventilation, dangerous moving machinery, and unprotected heights.

(AR 26).

The ALJ determined at step four that given the foregoing RFC, Coleman could perform her past relevant work as a skilled eligibility worker (Medicaid). (AR 35). The ALJ alternatively found at step five that Coleman could perform a significant number of unskilled, sedentary jobs in the national economy, including document preparer, addresser, tube operator, and call out operator. (AR 37). Therefore, Coleman's applications for DIB and SSI were denied. (*Id.*).

*C. Physical RFC*

Coleman's only argument on appeal is that the ALJ erred when she failed to include lifting limitations in the RFC. The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When determining the RFC, the ALJ must consider all medically determinable

5

impairments, mental and physical, even those that are non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

In crafting the RFC, the ALJ considered Coleman's hearing testimony that her elbows were at a constant level of 8-10/10 pain, but also her reports to providers that after a March 2020 right elbow revision surgery, she was "feeling great." (AR 33). The ALJ discounted Coleman's allegations of elbow pain, concluding that those allegations were not supported by the record and "[did] not reasonably nor persuasively warrant greater limitation in functioning" than the RFC. (*Id.*; *see also* AR 29).

Particularly relevant to the ALJ's analysis of Coleman's ability to lift and to her alleged elbow pain was William B. Kleinman, M.D.'s medical opinions. The ALJ relayed that Coleman first visited Dr. Kleinman on January 6, 2020, for bilateral elbow pain. (AR 28). The ALJ further examined the surgeries performed by Dr. Kleinman: first, a radial tunnel/right elbow revision surgery in March 2020, and second, a left elbow revision surgery performed in September 2020, both of which were revisions from a July 2019 surgery due to left lateral epicondylitis. (AR 28, 30; *see* AR 699-701).

The ALJ noted that following the surgery, Dr. Kleinman restricted Coleman from working and that she underwent non-sustained periods of physical therapy from July 2020 to December 2020. (AR 28). The ALJ also noted that Dr. Kleinman issued lifting restrictions on Coleman's right arm from May 2020 through February 2021, with the last restriction being issued on February 3, 2021. (AR 30).[4] The ALJ highlighted that there was "no documented evidence of follow-up with Dr. Kleinman after February 2021." (AR 30). The ALJ concluded

---

[4] As will be detailed below, Dr. Kleinman first restricted Coleman from lifting her right arm on the date of the first surgery, March 3, 2020, rather than in May 2020. (AR 699-701).

6

that Dr. Kleinman's restrictions did not "preclude [Coleman's] earlier July 31, 2020, report of playing/shooting basketball with her niece sufficient to result in report for some lateral forearm tingling related to use of a repetitive shooting motion," or Coleman's March 2021 report "for some ongoing period of work through July 2020." (*Id.*).

The ALJ also cited a March 2021 physical consultative examination performed by Stephen Parker, M.D., supporting an ability to lift and carry less than ten pounds frequently and more than ten pounds occasionally, which she deemed to be "reasonably consistent with and supported by essentially no greater upper extremity complaints than that accommodated by sedentary exertion." (*Id.*; *see* AR 748-59). The ALJ further cited Dr. Parker's August 2021 physical consultative examination, which did not contain any upper extremity complaints or clinical exam deficits. (AR 30; *see* AR 762-73). However, the ALJ noted Dr. Parker's conclusion that Coleman could not lift or carry ten pounds, finding this portion of the consultative examination not "consistent with nor reasonably supported by the overall evidence as whole," and therefore not persuasive. (AR 30; *see* AR 768).

For example, the ALJ wrote that exams through December 2021 did not support upper extremity clinical deficits and that there was an absence of a documented need for orthopedic follow-up after Dr. Kleinman's February 3, 2021, medical opinion, that Dr. Parker's clinical findings in his August 2021 consultative examination "remained essentially unchanged . . . from those obtained in March 2021," and that there was an absence of related clinical exam deficits performed by Coleman's treating primary care physician, by a cardiologist, and by other exams performed after March 2021. (*Id.*). Notably, the ALJ explained that the March and August 2021 consultative examinations showed no reduced range of motion throughout Coleman's upper

7

extremities, that she was able to engage in bilateral fine and gross hand manipulations, and that she had full 5/5 bilateral hand grip strength. (AR 31).

The ALJ also pointed to the opinions of the state agency physicians, who concluded in March and August 2021 that Coleman was able to sustain sedentary work with an ability to lift and carry ten pounds occasionally and less than ten pounds frequently at both the initial and reconsideration levels. (AR 33 (citing AR 83-84, 109-13)). The ALJ concluded the state agency physicians' opinions regarding Coleman's physical impairments—except their opinion regarding their finding of severe sprain—were partially persuasive. (AR 34). Ultimately, the ALJ limited Coleman to sedentary work, which "involves lifting no more than [ten] pounds at a time." (AR 35; *see* 20 C.F.R. §§ 404.1567(a), 416.967(a)).

Coleman now claims that the ALJ should have included greater limitations in her ability to lift. In support of her argument, Coleman points to the limitations in both of her arms imposed by Dr. Kleinman which she represents support a twelve-month closed period of disability. (ECF 14 at 11-14). She also contends that Dr. Parker's March and August 2021 consultative examinations support lifting restrictions beyond February 3, 2021, the last date Dr. Kleinman restricted Coleman from bilateral lifting. (*Id.* at 14-16). Lastly, Coleman takes issue with the ALJ's consideration of the fact that she played basketball with her niece and that she attended work in 2020 to support no greater limitations in lifting ability. (*Id.* at 13). Ultimately, two of Coleman's arguments are convincing and support remand.

1. Dr. Kleinman's opinions

To begin, Coleman asserts the ALJ should have considered whether Dr. Kleinman's lifting restrictions constituted a closed period of disability. (*Id.* at 10-11). She argues that Dr. Kleinman's restrictions of her ability to lift were effective from March 2020 to March 2021, not

8

May 2020 to February 2021. (ECF 14 at 12; ECF 20 at 11-12). She contends that, even though the medical record only reflects that Dr. Kleinman reconfirmed Coleman's lifting restrictions on February 3, 2021, and not after (*see* AR 725), the Court "should reject the . . . assertion the restrictions abruptly terminated on February 3, 2021, when the last [limitation] was given" (ECF 20 at 8 (footnote omitted)). She states that "[c]ommon sense dictates the restrictions were given with the intention they be followed after the appointment," and that "[i]t is more than reasonable to assume the restrictions . . . lasted [at least] four to six weeks, which is roughly how often Plaintiff had recently been seeing Dr. Kleinman." (*Id.* at 8). The Court agrees.

Dr. Kleinman issued several restrictions between March 2020 and February 2021. He first restricted Coleman from using her right arm on the date of her right elbow surgery, March 3, 2020, to May 11, 2020. (AR 682, 701, 730). From May 11, 2020, to August 31, 2020, Coleman was restricted from lifting above two pounds with her right arm. (AR 730; *see* AR 728). On August 31, 2020, that restriction decreased to five pounds. (AR 728). Dr. Kleinman reconfirmed the five-pound restriction on Coleman's right arm on October 26, 2020, November 18, 2020, December 2, 2020, and February 3, 2021. (AR, 672-74, 725, 677).

Coleman also underwent a second surgery on her left elbow on September 29, 2020. (AR 697). Dr. Kleinman restricted Coleman from using her left arm until December 2, 2020, after which he restricted Coleman from lifting above two pounds with her left arm. (AR 672-73, 675; *see* ECF 697-98). Dr. Kleinman reconfirmed this restriction on February 3, 2021. (AR 725).

As a preliminary matter, Dr. Kleinman's lifting restriction on Coleman's left arm cannot support a closed period of disability lasting twelve months because Coleman was, at most, restricted in her left arm from September 29, 2020, to sometime after February 3, 2021.

9

However, the record supports the conclusion that Dr. Kleinman imposed restrictions on Coleman's right arm from March 2020 to beyond February 3, 2021.

The last note from Dr. Kleinman reflects that Coleman was under a lifting restriction as of February 3, 2021, and this restriction presumably continued until April 7, 2021, the date Coleman was due for her next appointment. As stated by Coleman, the length between February 3, 2021, and April 7, 2021, corresponds to the typical length between her appointments with Dr. Kleinman and to the length during which previous restrictions lasted. While "[t]he ALJ was entitled to make reasonable inferences from the evidence before [her]," *Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997), inferring that the restrictions imposed on February 3, 2021, somehow stopped before March 2021 was not reasonable. In other words, Coleman has put forth medical evidence showing that she had a lifting restriction on her right arm for twelve consecutive months, that is, from March 2020 to at least March 2021. Because this case will be remanded, as will be discussed below, the ALJ will be instructed to consider a closed period of disability from when Coleman's right arm restrictions were assigned on March 3, 2020, the date of her right elbow surgery, and extended through April 7, 2021, the date she was next scheduled to see Dr. Kleinman.

Another matter pertaining to Dr. Kleinman's opinion requires attention. While the ALJ discussed Dr. Kleinman's treatment of Coleman's elbows at length, she never discussed the persuasiveness of his medical opinions. However, "[i]n reviewing a disability claim, an ALJ has an obligation to evaluate every medical opinion *and explain the persuasiveness of the opinion*." *Hebein v. Kijakazi*, No. 3:21-CV-880-TLS-MGG, 2023 WL 2583267, at *5 (N.D. Ind. Mar. 21, 2023) (emphasis added) (citing 20 C.F.R. §§ 416.920c(a), (b)). When considering the persuasiveness of any medical opinion, an ALJ must consider the following

10

factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c); *see also Inmam v. Saul*, No. 1:20-CV-231 DRL, 2021 WL 4079293, at *2 (N.D. Ind. Sept. 7, 2021). That is, "[u]nder the social security regulations, the ALJ must evaluate whether a medical opinion is supported or consistent with the record." *Cooper v. Kijakazi*, No. 20-C-1500, 2022 WL 972405, at *7 (E.D. Wis. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c). On remand, the ALJ will be tasked with assessing the persuasiveness she assigned to Dr. Kleinman's medical opinions and whether his opinions are consistent with the record. *Evanoff v. Comm'r of Soc. Sec.*, No. 2:21-CV-328 JD, 2022 WL 16737116, at *3 (N.D. Ind. Nov. 7, 2022) (remanding the case because "the ALJ erred by failing to articulate the persuasiveness" of the claimant's occupational therapist).

    2.  Dr. Parker's March and August 2021 consultative examinations

Coleman also points to Dr. Parker's consultative examinations performed in March and August 2021 to show that her lifting restrictions lasted twelve months or longer. She contests Dr. Parker's conclusion in the March 2021 consultative examination that she can frequently lift or carry less than ten pounds and occasionally lift or carry above ten pounds, and the ALJ's consideration of the August 2021 consultative examination. (ECF 14 at 14-16). She states that the August 2021 consultative examination was consistent with the medical record, though inconsistent with itself, unlike the March 2021 consultative examination, which was inconsistent with itself *and* with the medical record. (*Id.* at 15). She concludes that the ALJ erred in crediting

11

Dr. Parker's assessment in part and that she cherry-picked the August 2021 consultative examination. (*Id.* at 15-16).

Indeed, the ALJ erred when she failed to discuss Dr. Parker's March 2021 consultative examination findings in greater detail. The ALJ discussed Dr. Parker's conclusion that Coleman could lift and carry less than ten pounds frequently and more than ten pounds occasionally, and she found this portion of the consultative examination supported no greater limitation in Coleman's ability to lift weight. (AR 30). But the ALJ did not address Dr. Parker's functional capacity finding relaying that Coleman had a five-pound weight restriction on her right arm and a two-pound weight restriction on her left arm due to bilateral elbow surgery. (*See* AR 749). "An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest disability." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citation omitted). "The ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019) (citing *Zurawski*, 245 F.3d at 888); *see generally Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant."). Of course, having said that, the ALJ's assigned RFC is not without some support given the state agency physicians' RFC conclusion in their March and August 2021 opinions, which did not impose greater limitations, and other evidence of record.

Yet, the ALJ should have discussed and resolved the conflict within Dr. Parker's March 2021 consultative examination, rather than ignore it—particularly where she relied on part of Dr.

Parker's conclusions in her RFC assessment. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (noting that when the ALJ fails to mention key evidence in his opinion, the court is left to wonder whether such evidence was even considered). "Where conflicting evidence allows reasonable minds to differ, the responsibility for resolving the conflict falls on the ALJ, not the court." *Lee v. Barnhart*, No. 01 C 2776, 2003 WL 260682, at *5 (N.D. Ill. Feb. 6, 2003) (citing *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)). The ALJ's omission of part of Dr. Parker's March 2021 consultative examination makes unclear whether the ALJ considered it or what, if any, its potential effects on the RFC assessment were, which is all the more problematic given that the ALJ found the March 2021 consultative examination to be "reasonably consistent with and supported by essentially no greater upper extremity complaints than that accommodated by sedentary exertion." (*See* AR 30).

      The Commissioner explains this discrepancy by maintaining that the ALJ ignored this portion of Dr. Parker's medical opinion because "Dr. Parker merely noted Plaintiff's subjective reports of her functioning . . . ." (ECF 19 at 11). However, the ALJ did not conclude that Dr. Parker's RFC observation resulted from Coleman's own subjective statements nor is it apparent from the record. "The Commissioner cannot now rely on post hoc arguments to resolve such conflicts in medical evidence." *Sommer v. Saul*, No. 1:19-cv-00492-JVB-SLC, 2020 WL 6809260, at *6 (N.D. Ind. Oct. 30, 2020) (citation omitted).

      In sum, the ALJ failed to build a logical bridge from Dr. Parker's March 2021 consultative examination opinion to the assigned RFC. Therefore, the Court will remand the Commissioner's final decision for reconsideration of Dr. Parker's March 2021 consultative examination and the physical RFC, in addition to considering whether Coleman qualifies for a

closed period of disability due to her right arm lifting restriction exceeding twelve months.[5] "The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge." *Thelmarae W. v. Saul*, 476 F. Supp. 3d 717, 724 (7th Cir. 2020) (citations omitted); *see, e.g.*, *Fahima H. v. Comm'r of Soc. Sec.*, No. 20-CV-0292MWP, 2021 WL 3615702, at *4 (W.D.N.Y. Aug. 16, 2021) (remanding case where the ALJ applied significant weight to a medical source opinion, but then ignored certain limitations included in the opinion when assigning the RFC).

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Coleman and against the Commissioner.

SO ORDERED.

Entered this 22nd day of March 2024.

    /s/ Susan Collins
    Susan Collins
    United States Magistrate Judge

---

[5] Because this case is being remanded to reconsider Dr. Parker's March 2021 consultative examination, the physical RFC with respect to Coleman's limitation in lifting and carrying with her right arm, and a closed period of disability based on her right arm restrictions from March 3, 2020, to at least April 7, 2021, the Court need not reach Coleman's argument challenging the ALJ's analysis regarding the August 2021 consultative examination and her analysis with respect to Coleman's brief period of work activity in 2020 and her ability to play basketball with her niece.